IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IGNACIO HUMANN, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) ORESTES GARCIA d/b/a North & Elston Amoco, ) ) Defendant. ) | No. 07 C 7165<br><br>Judge Andersen<br><br>Magistrate Judge Nolan |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

## I.   Introduction

In its motion to dismiss, Defendant admits that it charged Plaintiff an automated teller machine ("ATM") service fee that was more than the fee notice posted on the machine.[1] Defendant also admits that the fee notice posted on the outside of the machine contradicted the fee notice provided on the ATM's screen.[2] But Defendant contends that this contradiction is permissible because, even though the ATM's posted fee notice was wrong, the notice on the screen of the ATM advised consumers of the correct $2.50 charge. This argument is flawed for three reasons: (1) it is contrary to the express statutory language of the Electronic Funds Transfer Act and its implementing regulations;[3] (2) it has already been rejected by this Court;[4] and (3) the differences between the notices cause the accuracy of each to be doubted.

---

[1]   *See* Def's Mot. at ¶ 5. Defendant charged $2.50 for the use of the ATM but its sign on the machine represented that the fee would be $2.00.

[2]   *See* Def's Mot. at ¶ 5.

[3]   15 U.S.C. § 1693 *et seq.* and Regulation E, 12 CFR § 205.1 *et seq.* The Electronic Funds Transfer Act will be referred to herein as the "EFTA" or the "Act."

Prior to charging a fee for use of an ATM, the EFTA requires that ATM operators disclose, (1) that a fee will be imposed, and (2) the amount of the fee.[5] The Act also requires that fee notices be provided in two locations – on the screen and on the outside of the machine. In this case, because Defendant's fee notices contradict one another, neither notice is "clear and readily understandable," as is required under EFTA.[6] It is axiomatic that neither notice is more likely to be taken as true because both notices come from the same source – it is only after being actually charged the fee that the consumer can, in hindsight, determine which notice was correct.

Ignoring the strict liability standard governing ATM-operator conduct, Defendant tries the same argument that was rejected by Judge Plunkett in *Burns v. First American Bank*, Case No. 04 C 7682. In addition to the obvious problems associated with conflicting fee notices (*i.e.*, an inability to determine which fee would actually be charged), Judge Plunkett found that the *Burns'* plaintiffs stated a claim for an EFTA violation, explaining, "…because EFTA's purpose is to promote disclosure, prevent fraud, and to allocate liabilities, it is evident that its primary objective, as stated in the statute, is the provision of individual consumer rights."[7]

Defendant's argument, if accepted, would allow all ATM operators to falsely notify consumers of a fee amount, but then actually charge whatever they want. Courts have already

---

[4]   See *Burns v. First American Bank*, 2005 U.S. Dist. LEXIS 9485 (N.D. Ill. Apr. 28, 2005) (ATM operator's motion to dismiss EFTA claim denied).

[5]   15 U.S.C. § 1693b(d)(3)(A).

[6]   66 Fed. Reg. 13409, 13411 (2001) explains: "Several commenters requested guidance on how the requirements in § 205.4(a), that disclosures be clear and readily understandable and in a form the consumer may keep, apply to the ATM disclosure requirements. The notice required to be posted on or at the ATM under § 205.16(c)(1) must be placed in a prominent and conspicuous location. **The 'clear and readily understandable' standard applies to the content of the notice.**" (Emphasis added).

[7]   See *Burns*, 2005 U.S. Dist. LEXIS 9485 at *16.

2

disallowed contradictory notices under other consumer protection statutes, and therefore, this Court should follow the lead of Judge Plunkett and deny Defendant's motion to dismiss.

## II.    The EFTA Requires Clear and Accurate Disclosures

### A.    Statutory Framework and ATM Fee Notice Requirements

The EFTA was enacted "to protect individual consumer rights by providing a 'basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems.'"[8] It is also a strict liability statute, as § 1693b(d)(3) "prohibits an ATM operator from charging a fee unless it provides notice of its fee on the machine and on the screen, period, no mention of a necessary scienter."[9] Even if the consumer acquiesces to a fee, the operator is prohibited from charging the fee if it fails to comply with the statute's regulatory requirements.[10]

The disclosure provisions at issue in this case provide, in relevant part, as follows:

> (3)    Fee disclosures at automated teller machines.
> (A)    In general. The regulations prescribed under paragraph (1) **shall require** any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of —
> (B)    Notice requirements.
> (i)    **On the machine**. The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.
> (ii)    **On the screen**. The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall

---

[8]    *See Burns v. First American Bank*, 2006 U.S. Dist. LEXIS 92159, *4 (N.D. Ill. Dec. 19, 2006) (*quoting* 15 U.S.C. § 1693(b)).

[9]    *Id.* at *19 (*citing Bisbey v. D.C. National Bank*, 253 U.S. App. D.C. 244, 793 F.2d 315, 318-19 (D.C. Cir. 1986)).

[10]    *See* 15 U.S.C. § 1693b(d)(3)(C) entitled "Prohibition on fees not properly disclosed **and explicitly assumed by consumer**." (Emphasis added).

appear on the screen of the automated teller machine, ... and before the consumer is irrevocably committed to completing the transaction.

(C) **Prohibition on fees not properly disclosed and explicitly assumed by consumer. No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless —**

    (i) **the consumer receives such notice in accordance with subparagraph (B); and**

    (ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

15 U.S.C. § 1693b(3) (emphasis added).

    § 205.16 Disclosures at automated teller machines.

(b) **General. An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall:**

    (1) **Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and**

    (2) **Disclose the amount of the fee.**

(c) Notice requirement. To meet the requirements of paragraph (b) of this section, an automated teller machine operator must comply with the following:

    (1) On the machine. Post in a prominent and conspicuous location on or at the automated teller machine a notice that:

        (i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; or

        (ii) A fee may be imposed for providing electronic fund transfer services or for a balance inquiry, but the notice in this paragraph (c)(1)(ii) may be substituted for the notice in paragraph (c)(1)(i) only if there are circumstances under which a fee will not be imposed for such services; and

    (2) Screen or paper notice. Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

(e) Imposition of fee. **An automated teller machine operator may impose a fee on a consumer for initiating an electronic fund transfer or a balance inquiry only if**

    (1) The consumer is provided the notices required under paragraph (c) of this section, and

    (2) The consumer elects to continue the transaction or inquiry after receiving such notices.

12 C.F.R. § 205.16 (emphasis added).

    First, 12 C.F.R. § 205.16(b)(1) explains that if the operator wants to impose a fee, that fact must be disclosed. Second, 15 U.S.C. § 1693b(3)(B)(i) requires that an operator post the

4

fact that a fee will be charged in a prominent and conspicuous location on the machine – in other words, the consumer has to be able to see it. Third, 12 C.F.R. § 205.4(a)(1) provides that, "Disclosures required under this part shall be clear and <u>readily understandable</u>, in writing, and in a form the consumer may keep," and the Federal Reserve Board has already determined that this standard applies to "on the machine" disclosure requirements.[11]

It is undisputed that, in spite of these requirements, Defendant's posted ATM fee notice ($2.00) contradicted the amount of the fee Defendant disclosed on its ATM screen ($2.50). And while the EFTA does not require an ATM operator to state the amount of the fee on the notice posted on the outside of the ATM,[12] when an operator undertakes to state a specific fee amount, it cannot be literally false.

Defendant contends that this Court should dismiss Plaintiff's Complaint because it claims it complied with the on-screen notice requirements, which allegedly (though the allegation is not in the Complaint) advised consumers of the correct $2.50 ATM fee. Assuming *arguendo* that the on-screen notice was correct, a consumer still would not know which notice ($2.00 or $2.50) was correct prior to completing the transaction and being charged a fee. The EFTA was enacted to promote disclosure. "[A]n inexact, inaccurate, or incomplete notice may result in the consumer not being well-informed, or lacking understanding and thus may be considered improper."[13] In effect, the conflicting amounts on the two notices render both notices unclear,

---

[11]　66 Fed. Reg. 13409, 13411 (2001) (Emphasis added).

[12]　*See* 15 U.S.C. § 1693b(d)(3)(B)(i). Consumers only need be advised there will be <u>a</u> fee for use of the ATM on the outside of the machine. The operator is, however, required to state the exact amount of the fee on the screen of the ATM prior to imposing the fee. *See* 15 U.S.C. § 1693b(d)(3)(B)(ii).

[13]　*See Burns*, 2005 U.S. Dist. LEXIS 9485 at *10.

thus violating EFTA's purpose of promoting clear, readily understandable, and accurate disclosures.[14]

### B. Similar Statutes Require Notices to Be Consistent, Clear, and Accurate

In addition to this Court's ruling in *Burns* on the very same issue, courts assessing conflicting notices in the context of other consumer protection statutes have reached the same conclusion. Such conclusions are instructive here, because those statutes have language identical or similar to the EFTA. The EFTA was an amendment to the Consumer Credit Protection Act, 15 U.S.C. § 1601 *et seq.* ("CCPA"), which houses other consumer credit protection statutes, including the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").[15] "Given the common purpose underlying each statute and the often similar language, courts find case law interpreting one act under the CCPA umbrella as persuasive in interpreting the other acts." [16]

In *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir. 1997), the Seventh Circuit reversed a dismissal of a TILA claim when the defendant failed to itemize a fee on a document. Even though the defendant was not required to make that disclosure to the plaintiff, it voluntarily did so. The Court found that because the defendant furnished the itemization, and it contained a false representation, it could be liable under TILA.[17] Similarly,

---

[14] 66 Fed. Reg. 13409, 13411 (2001) ("The 'clear and readily understandable' standard applies to the content of the notice.")

[15] *Burns*, 2006 U.S. Dist. LEXIS 92159 at *4.

[16] *Id.* at *6, fn. 1 (*citing Johnson v. W. Suburban Bank*, 225 F.3d 366, 379 (3d Cir. 2000)).

[17] *Gibson*, 112 F.3d at 285.

here, even though Defendant was not required to state the amount of his posted ATM fee, he did so with a false amount. If a disclosure is false, (and as here, renders a second notice unclear) it is not clear and readily understandable, thus violating the EFTA and providing the basis for denial of Defendant's motion to dismiss.

The Seventh Circuit has taken a similar approach with FDCPA cases. Section 1692g of the FDCPA requires debt collectors to provide debtors with a validation notice with, or within five (5) days of, an initial communication with an alleged debtor, which notice is intended to advise consumers about certain rights to dispute a debt, request verification of a debt or obtain information about a creditor.[18] Some debt collectors choose to include the required validation language but also include additional language that contradicts or overshadows the validation language. This inclusion violates the FDCPA, as courts have deemed such notices not effectively communicated, as they prevent true and meaningful disclosure.[19] Similarly here, Defendant's false notice renders both the posted notice and the on-screen notice meaningless,

---

[18] 15 U.S.C. § 1692g(a)(1-5).

[19] *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000) ("Marshall-Mosby does not allege that the CRI letter omits the required validation notice. Instead, she claims that additional language in the letter contradicts and 'overshadows' the validation notice and thus violates the FDCPA. Indeed, we have held that a violation of the FDCPA occurs when a dunning letter is confusing to the unsophisticated reader, even if the letter technically complies with the FDCPA by including the required validation notice. *See Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997); *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516 (7th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996). Debt collectors 'may not defeat the statute's purpose by making the required disclosures in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors who are the particular objects of the statute's solicitude.' *Bartlett*, 128 F.3d at 500; *see also Russell v. Equifax A.R.S.*, 74 F.3d 30, 34-35 (2d. Cir. 1996); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991); *Swanson v. Southern Or. Credit Serv.*, 869 F.2d 1222, 1225 (9th Cir. 1988). The key consideration is 'that the unsophisticated consumer is to be protected against confusion whatever form it takes.' *Bartlett*, 128 F.3d at 500; *see also Gammon v. GC Servs. Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994)"); *see also Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996) (holding that "[t]he general rule is that if a statement is literally false, the court may grant relief without reference to the reaction of buyers or consumers of the product").

because the consumer would not know which fee is correct until the transaction is complete, a receipt is printed and the fee is withdrawn from the consumer's account.[20]

Furthermore, whether the on-screen notice was correct and properly advised Plaintiff and other consumers of the correct fee is irrelevant, because it relies on the premise that the consumer was ultimately informed of the correct fee prior to completing the transaction. As an initial matter, nothing in the Complaint alleges that Plaintiff was advised by an on-screen notice that the fee would be $2.50. Moreover, a consumer's state of mind, *i.e.*, whether he was advised of the correct fee prior to completing the transaction, is irrelevant to this case. Plaintiff seeks only statutory damages and disgorgement of the improperly imposed transaction fees.[21] "A plaintiff seeking statutory damages need not prove that he relied upon, was confused by or misled by a defendant's representations...a person that used Defendant's ATM would not need to prove that he was confused or even that he saw the fee notice on the outside of the machine to be entitled to statutory damages."[22] As statutes are to be interpreted by the courts to avoid absurd results,[23] Defendant's request that its posted notice be disregarded, or treated as information not required by statute, must be denied.

---

[20] Notwithstanding Defendant's request that this Court treat its false notice as "surplusage" (*See* Def's Mot. at ¶ 6), the false information is anything but mere surplusage, because a consumer is left not knowing which is true. Analogously, if a loan document disclosed two different interest rates, and only one of them is correct, the consumer does not know which is correct. Both documents come from the same source and thus both are equally reliable.

[21] "No fee may be imposed ... unless ... the consumer receives such notice in accordance with subparagraph (B)...." 15 U.S.C. § 1693b(d)(3)(C).

[22] *Burns*, 2006 U.S. Dist. LEXIS 92159 at *21.

[23] *See FutureSource L.L.C. v. Reuters Ltd.*, 312 F.3d 281, 284-85 (7th Cir. 2002) ("Nonsensical interpretations of contracts, as of statutes, are disfavored . . . not because of a judicial aversion to non-sense as such, but because people are unlikely to make contracts, or legislators statutes, that they believe

### III. Conclusion

Defendant voluntarily posted a false notice on its ATM, which contradicted the notice on the ATM's screen, and rendered both notices meaningless. In light of Defendant's violation of the statutory provisions of the EFTA, the purpose of which is to protect consumer rights and require clear and readily understandable disclosures, this Court should deny Defendant's motion to dismiss in its entirety.

Respectfully submitted,

By: /s/ Lance A. Raphael
One of Plaintiff's Attorneys

Lance A. Raphael
Stacy M. Bardo
Allison A. Krumhorn
The Consumer Advocacy Center, P.C.
180 West Washington, Suite 700
Chicago, IL  60602
(312) 782-5808

---

will have absurd consequences."); *see also Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 976 (7th Cir. 2004) (same).